```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

GERARDO LANDAVERDE RODRIGUEZ,
        Plaintiff,


             v.                          CIVIL ACTION NO.
                                         17-10174-MBB

DON SHAPIRO PRODUCE COMPANY,
        Defendant.
```

**MEMORANDUM AND ORDER RE:**
**DEFENDANT DON SHAPIRO INCORPORATED'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 44)**

**March 27, 2019**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment filed by defendant Don Shapiro Produce Company ("defendant" or "the company").[1]  (Docket Entry # 44).  Plaintiff Gerardo Landaverde Rodriguez ("plaintiff") opposes the motion.  (Docket Entry # 55).  After conducting a hearing, this court took the motion (Docket Entry # 44) under advisement.

<u>PROCEDURAL BACKGROUND</u>

Liberally construing the pro se complaint, it sets out the following causes of action:  (1) theft of past settlements or awards for medical benefits obtained for workers' compensation payments awards; (2) wrongful termination for refusing to sign

---

[1] Defendant points out that the complaint incorrectly identifies it as Don Shapiro Produce Company.  Defendant's correct name is Don Shapiro Incorporated.  (Docket Entry # 45-1, ¶ 2).

documents and a check; and (3) intentional interference with advantageous business relations based upon defendant giving a "bad recommendation" or negative references. (Docket Entry # 1). Defendant moves for summary judgment on all of the claims in the complaint. (Docket Entry # 44).

STANDARD OF REVIEW

Summary judgment is designed "to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Express Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is inappropriate "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).

"Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)). The evidence is viewed "in the light most

favorable to the non-moving party" and "all reasonable inferences" are drawn in his favor.  Ahmed v. Johnson, 752 F.3d 490, 495 (1st Cir. 2014).  "Unsupported allegations and speculation," however, "do not demonstrate either entitlement to summary judgment or the existence of a genuine issue of material fact sufficient to defeat summary judgment."  Rivera-Colón v. Mills, 635 F.3d 9, 12 (1st Cir. 2011); see Serra v. Quantum Servicing, Corp., 747 F.3d 37, 39-40 (1st Cir. 2014) ("allegations of a merely speculative or conclusory nature are rightly disregarded").  Plaintiff's unsworn statements in his opposition (Docket Entry # 55) and an undated statement in the attached exhibits (Docket Entry # 55-1, p. 6) lack any indication that they are signed under pains and penalties or perjury.  As such, they are not the equivalent of an affidavit or declaration within the meaning of Rule 56(c) and do not carry evidentiary weight in the summary judgment calculus.  See Fragoso v. Lopez, 991 F.2d 878, 887 (1st Cir. 1993) (statements in opposition brief do not avoid summary judgment because "litigant 'may not rest upon mere allegations in, say, an unverified complaint or lawyer's brief, but must produce evidence which would be admissible at trial to make out the requisite issue of material fact'") (citations omitted).  The documents filed as exhibits to plaintiff's opposition also include a May 2012 affidavit (Docket Entry # 55-1, pp. 71-72), which is considered part of the

evidentiary record as are other documents in the exhibits with the exception of the above-noted, undated and unsworn statement (Docket Entry # 55-1, p. 6).

Defendant filed a LR. 56.1 statement of undisputed facts. (Docket Entry # 46). Although plaintiff filed an opposition to the summary judgment motion, he did not include or otherwise file a LR. 56.1 response controverting, with page references to the record, the statement of facts in defendants' LR. 56.1 statement. See LR. 56.1. Uncontroverted statements of fact in the LR. 56.1 statement comprise part of the summary judgment record. See LR. 56.1; Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003). Adhering to this framework, the record sets out the following facts.

## FACTUAL BACKGROUND

A. Plaintiff's History

Plaintiff was born in El Salvador on October 25, 1973 and entered "the United States without inspection on December 1st, 1998 through Phoenix, [Arizona]." (Docket Entry # 1-5, p. 12) (Docket Entry # 55-1, p. 71). At the time of his arrival, he was 25 years old and illiterate. (Docket Entry # 1-5, pp. 12-13) (Docket Entry # 55-1, p. 71). In 2001, plaintiff "applied

for El Salvador Temporary Protect[ed] Status and" obtained an "Employment Authorization Card" and a social security card. (Docket Entry # 1-5, p. 12) (Docket Entry # 55-1, p. 71).

Plaintiff was involved in two separate workplace accidents and received financial settlements for each workers' compensation claim submitted to or approved by the Massachusetts Department of Industrial Accidents. (Docket Entry # 55-1, pp. 22-23, 37-38). The first accident took place on August 11, 2006 at Metropolitan Cabinet Distributers Company, plaintiff's former employer. (Docket Entry # 1-5, p. 13) (Docket Entry # 2, p. 2) (Docket Entry # 55-1, pp. 22-23, 29-30). On May 26, 2009, plaintiff obtained a lump sum amount of $25,000 adjusted to $17,825 after deducting plaintiff's attorney's fees and expenses to a Boston law firm. (Docket Entry # 55-1, pp. 22-23, 26). The second accident took place on February 3, 2013 at State Garden, another former employer. (Docket Entry # 55-1, pp. 37-38, 77). Plaintiff began working at State Garden, located in Chelsea, Massachusetts, in November 2012. (Docket Entry # 55-1, p. 77). Represented by counsel, plaintiff received a lump sum amount of $3,000 with no adjustment for deductions. (Docket Entry # 55-1, pp. 37-38). The settlement agreement identifies American Resources Staffing ("ARS"), a company associated with plaintiff's employment at State Garden, as plaintiff's employer. (Docket Entry # 55-1, pp. 37-39, 77).

In the meantime, plaintiff received a letter dated February 23, 2012 from the Selective Service System ("SSS") informing him of a failure to register and including a request for information.[2] (Docket Entry # 55-1, pp. 72, 75) (Docket Entry # 1-5, p. 7). After receiving additional letters from SSS dated March 22 and April 5, 2012, plaintiff responded with an affidavit dated May 12, 2012 to SSS stating that he did not know he was required to register when he arrived in the United States. (Docket Entry # 1-5, pp. 12-13) (Docket Entry # 55-1, pp. 71-75). In the affidavit, plaintiff states that he is not a "Legal Permanent Resident" and has been under "Temporary Protected Status since" June 2001. (Docket Entry # 55-1, p. 72). SSS responded by letter dated June 7, 2012 instructing plaintiff to "take the Status Information letter we sent to you previously, and this letter to the agency which administers the benefit you wish to receive" "which is contingent" on your registration with SSS. (Docket Entry # 55-1, p. 70) (Docket Entry # 1-5, p. 15).

B. <u>Plaintiff's Employment at Don Shapiro Incorporated</u>

---

[2] The complaint alleges that after plaintiff received the letter and provided the information, the SSS deposited "money to a credit card with" a bank. (Docket Entry # 1, ¶ 3) (capitalization omitted). Plaintiff purportedly received text messages stating he must activate the approved credit card, according to the complaint. (Docket Entry # 1, ¶ 3). Plaintiff "never received" the approved card. (Docket Entry # 1, ¶ 3).

6

Plaintiff completed an application for employment with defendant on October 30, 2013. (Docket Entry # 45-2, pp. 2-3). In the application, plaintiff identifies his former employers "Hanna Ford & Dumas" and "[B]oston [R]etail." (Docket Entry # 45-2, p. 2). In fact, the application reflects that plaintiff worked at Hannah Ford & Dumas from September 2012 to June 2013, a time period that encompasses the date of the second workers' compensation injury on February 3, 2013. (Docket Entry # 45-2) (Docket Entry # 55-1, p. 37). The employment application omits the names of plaintiff's two other former employers, namely, State Garden and Metropolitan Cabinet Distributors. (Docket Entry # 45-2). As previously indicated, plaintiff received financial settlements and/or approved workers' compensation awards from two insurance carriers of these two former employers, State Garden (or ARS) and Metropolitan Cabinet Distributors. (Docket Entry # 55-1, pp. 22-23, 37-40). As a result, James Schofield ("Schofield"), defendant's chief operating officer who was responsible for the company's daily operations and functions, had no knowledge about these past workers' compensation settlements and claims. (Docket Entry # 45-1). Schofield also oversaw human resources functions at the company throughout the relevant time period. (Docket Entry # 45-1).

On October 31, 2013, defendant hired plaintiff to work "the night shift as an order picker," i.e., "someone who uses a forklift to gather produce ordered by a customer." (Docket Entry # 46, pp. 1-2, ¶¶ 3, 8) (Docket Entry # 45-1). While employed at defendant's establishment, plaintiff worked alongside Alcidas Vivas Chacon ("Chacon") and Efrain Vega ("Vega") and under the supervision of Ismael Garcia ("Garcia"). (Docket Entry # 46, p. 2, ¶¶ 9-10) (Docket Entry # 45-1, ¶ 10).

C. Termination

Plaintiff remained employed by defendant for approximately 25 months until late November 2015. (Docket Entry # 46, p. 1, ¶ 3). Schofield attests by affidavit that plaintiff "performed adequately in his job for some time." (Docket Entry # 45-1, ¶ 16) (Docket Entry # 46, p. 4, ¶ 21). Tensions began to surface in 2014 when plaintiff began accusing his supervisor, Garcia, and coworkers, Chacon and Vega, of defrauding him. (Docket Entry # 45-1, ¶ 16) (Docket Entry # 46, p. 4, ¶ 22). Schofield states that other night shift workers at times "teased [plaintiff] or 'egged him on' with respect to [plaintiff's] . . . claims." (Docket Entry # 45-1, ¶ 16) (Docket Entry # 46, p. 4, ¶ 23). On or about December 3, 2014, Garcia hit a car in the company parking lot purportedly owned by plaintiff which resulted in $1,223.18 worth of damage. (Docket Entry # 55-1, pp. 7, 9-13).

8

In November 2015, plaintiff assaulted Garcia with a knife while on the job. (Docket Entry # 46, p. 4, ¶ 24) (Docket Entry # 45-1, ¶ 17). A company security camera recorded the incident. (Docket Entry # 45-1, ¶ 17). The assault prompted plaintiff's November 2015 termination. (Docket Entry # 45-1, ¶ 17) (Docket Entry # 46, p. 4, ¶ 26). Schofield avers by affidavit that "no one" at the company "has ever provided a negative reference to companies with whom plaintiff has sought employment since his termination." (Docket Entry # 45-1, ¶ 18) (capitalization omitted); (Docket Entry # 46, pp. 4-5, ¶ 27).

## DISCUSSION

Defendant moves for summary judgment on all of the causes of action in the complaint. (Docket Entry ## 44, 45). In opposing summary judgment, plaintiff contends that defendant stole his personal information and money from his two insurance award payments causing him irreparable financial damage. He also complains that his November 2013 termination resulted from his refusal to sign the check and other documents. He further asserts that defendant gave him bad recommendations and employment references. (Docket Entry # 55).

A.  Theft of Insurance Awards

Defendant submits that it took no part in the insurance awards because they predated plaintiff's employment and no one at the company had any knowledge about them. Accordingly, it

9

maintains there are no facts that defendant used any information
obtained from the second accident to steal or claim benefits
awarded for the first accident and there is no link between
defendant and any of the insurance awards or the theft of
medical benefits.[3]  Defendant also points out that it had no
access to plaintiff's personal information regarding either
settlement.  (Docket Entry # 45).

    The claim that defendant stole all or part of plaintiff's
insurance awards best resembles a conversion claim.  In
Massachusetts, a civil cause of action for conversion
encompasses wrongfully exercising control over the property,
i.e., the insurance awards, of another, i.e., plaintiff.  See
ZVI Constr. Co., LLC v. Levy, 60 N.E.3d 368, 374 (Mass. App. Ct.
2016) (affirming allowance of summary judgment for defendant law
firm on claim that it converted client's settlement money held
in IOLTA account, which plaintiff alleged belonged to it),
denying review, 75 N.E.3d 1131 (Jan. 26, 2017).  "'Conversion

---

[3]  The complaint asserts that:

> Through this [second] accident, they used that information
> to claim my benefit and used an attorney(s).  And members
> of the Shapiro Produce company found my bank account (AIG)
> of my first case for accident and labor compensation in
> 2006.  It was still ongoing Open and that they could claim
> those money and benefits, used all my information to make
> claims and closure of my medical benefits on my behalf.

(Docket Entry # 1, p. 2) (capitalization omitted).

10

requires the exercise of dominion or control over the personal property of another.'" Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005) (quoting Third Nat'l Bank of Hampden Cty. v. Cont'l Ins. Co., 446 N.E.2d 380, 383 (Mass. 1983)); accord Weiler v. PortfolioScope, Inc., 12 N.E.3d 354, 365 (Mass. 2014) (liability for conversion requires the defendant to "wrongfully 'exercise dominion or control over the personal property of' the plaintiff") (citations omitted). Notably, an "action for conversion cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself or to deprive the rightful owner of it, or destroyed the property." Kelley v. LaForce, 288 F.3d 1, 12 (1st Cir. 2002) (applying Massachusetts law) (internal citations and quotation marks omitted).

There is a dearth of evidence showing that defendant exercised any control over the insurance settlement awards. There is no evidence that plaintiff disclosed the existence of these claims, which predated his employment at the company, to defendant or provided information about them on his October 30, 2013 application for employment. Garcia, Chacon, and/or Vega did not have access to plaintiff's personal information, including his social security number. (Docket Entry # 46, p. 3, ¶ 13). Neither Schofield nor anyone else in management used

plaintiff's personal information in connection with these prior workers' compensation claims. (Docket Entry # 46, pp. 2-3, ¶¶ 12, 14).[4] With defendants having affirmatively established these facts showing that defendant did not wrongfully exercise control over plaintiff's property, plaintiff fails to provide sufficient evidence to the contrary. Summary judgment on the conversion or theft of benefits claim is therefore appropriate.

B.  Wrongful Termination Claim

The complaint alleges that Garcia attempted to force plaintiff to sign a document to withdraw his money and to cancel his medical benefits. (Docket Entry # 1, p. 4). Defendant then terminated plaintiff's employment "for refusing to sign documents and check from [his] own money of [his] compensation work and medical benefits." (Docket Entry # 1, p. 4) (capitalization omitted).

Plaintiff fails to provide sufficient evidence that he was not an at-will employee. In Massachusetts, "'an at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy.'" Barbuto v. Advantage Sales and Mktg., LLC, 78 N.E.3d 37, 50 (Mass. 2017) (quoting King v. Driscoll, 638 N.E.2d 488, 492 (Mass. 1994)); King v. Driscoll, 638 N.E.2d at 492 (recognizing

---

[4] As previously explained, plaintiff does not controvert these statements in defendant's LR. 56.1 statement.

12

"general rule that," absent violation of clearly established public policy, "an employer may terminate an at-will employee at any time with or without cause"); Wright v. Shriners Hosp. for Crippled Children, 589 N.E.2d 1241, 1244 (Mass. 1992) (recognizing "general rule that '[e]mployment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all'") (internal citation omitted). "Certain grounds for terminating an at-will employee" are "categorically unlawful due to public policy," such as terminating an at-will employee for "filing for workers' compensation." Kelley v. Lawrence Pub. Sch., Civil Action No. 16-11116-DJC, 2018 WL 6833508, at *2 (D. Mass. Dec. 27, 2018), appeal filed, (1st Cir. Jan. 25, 2019) (No. 19-1110); King v. Driscoll, 638 N.E.2d at 492; see Saltzman v. Town of Hanson, 935 F. Supp. 2d 328, 344 (D. Mass. 2013).

Defendant points to the absence of documents or other admissible evidence to support the claim. Plaintiff does not provide factual evidence that a check existed or that Garcia or anyone else at the company forced him to sign a document at or around the time of his termination. Plaintiff also fails to provide sufficient evidence that defendant terminated him by forcing him to sign a check or document that deprived him of

13

past wages or past medical benefits that he earned.[5]  See Vertex
Pharm., Inc. v. Renshaw, Civil Action No. 16-11912-FDS, 2017 WL
1015003, at *2 (D. Mass. March 15, 2017); Saltzman v. Town of
Hanson, 935 F. Supp. 2d at 344.  Lacking any evidence to support
either a termination in violation of clearly established public
policy claim or breach of an implied covenant of good faith and
fair dealing claim, defendant is entitled to summary judgment on
the termination claim.[6]

C.  Interference with Advantageous Relationship Claim

The complaint asserts that plaintiff "applied to work in
other companies" and that defendant gave him a "bad
recommendation and reference" regarding his workplace skills and
productivity.  (Docket Entry # 1, p. 4).  Defendant points to
the absence of evidence of a potential employer or third party,
the identity of the individual at the company that made the
negative statements, the imminency of any job offer, and/or an
improper motive.  (Docket Entry # 45).

In order to successfully establish a:

> claim for intentional interference with advantageous
> relations, a plaintiff must prove that (1) he had an
> advantageous relationship with a third party (e.g., a
> present or prospective contract or employment

---

[5] This court expresses no opinion as to whether a deprivation of past medical benefits falls within the reach of this exception to the general rule applicable to an at-will employment termination.
[6] Plaintiff also fails to provide evidence to support a discriminatory termination claim.

relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions

Blackstone v. Cashman, 860 N.E.2d 7, 12-13 (Mass. 2007); accord Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (quoting Blackstone v. Cashman, 860 N.E.2d at 12-13).  Plaintiff fails to provide sufficient evidence to allow a jury to find that he had an advantageous relationship or that defendant interfered with that relationship.  In fact, the evidence shows that no one at the company provided a negative reference to any company where plaintiff sought employment after his November 2015 termination.  (Docket Entry # 45-1, ¶ 18) (Docket Entry # 46, pp. 4-5, ¶ 27).  These as well as the other deficiencies identified by defendant warrant summary judgment on this claim.

## CONCLUSION

In accordance with the foregoing discussion, defendant's summary judgment motion (Docket Entry # 44) is **ALLOWED** on all claims in the complaint.  As a result, a final judgment will enter in defendant's favor.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge